The first case called for oral argument is Trimble v. Graves v. B.A. Poole for Farms. Counsel? May it please the court, may it please the counsel, my name is Bob Douglas, I'm from Robinson, Illinois, and I am the appellate. May it please the court, I know from previous arguments that you have already read the briefs, so I'm not going to read them from the brief for you. I'm going to give you my take on what really just happened. Typically, as you all know, that there is no records for a jury trial when the jurors start their deliberations, and typically there's none in the arbitration. However, in this case, our arbitrator, Timothy L. Budakoffer, had dissented and filed an opinion. He was the only one to file an opinion. Loyce, Kurtz, and Mr. Fred Kunstler did not file opinions.  I would urge the courts to examine Exhibit E, which is the dissenting opinion of Timothy L. Budakoffer. It's appendix to my original brief. Mr. Budakoffer states that in his dissent that Mr. Loyce Kurtz did not arbitrate and that Joe Trimble was deserving of nothing for Joe Trimble because he was not proactive in recovering his lease property. This was not an issue that was submitted to the arbitrators to arbitrate, and we know, and I know I put it in my brief, that there was a written agreement between Joe Trimble and the Graves brothers, and it's a 10-year statute of limitations. But Mr. Kurtz took it upon himself because Mr. Budakoffer stated that Mr. Kunstler really did not add anything in the arbitration proceedings, and it was all Mr. Kurtz. From the minute he walked in, in the arbitration proceeding, he took charge and stated that Joe Trimble was not deserving of anything. After approximately two hours, Mr. Kurtz made a motion for the respondent to tell the arbitrators what they thought was fair. Mr. Budakoffer dissented on that motion. Paragraph 6 of the arbitration agreement, and this is a binding, binding part of the agreement. Arbitration proceedings are sometimes loosey-goosey because the rules of evidence don't know because these arbitrators that were arbitrating them are not lawyers. They were derringer. But Paragraph 6 of the arbitration agreement states, This paragraph can be modified only by the acceptance of all three arbitrators and the parties. Mr. Kurtz did not read Paragraph 6 because he violated the arbitration agreement two times. The motion to have the respondents make the decision, and when he did have the respondents make the decision, to his damages. Judge Weber did not read the arbitration agreement either for the simple reason because he did not cite it in his order. He didn't cite Tim Budakoffer's dissenting decision and his decision also when he rubber-stamped the three arbitrators. There were four deviations. Paragraph 6 of the arbitration agreement that says that it cannot be modified. And the two prevailing arbitrators were supposed to write a written order. It could be handwritten, but there was no written order. He violated the paragraphs under the arbitration agreement in Paragraph 6 because he made the motion to have the respondents make the decision of how much money was owed. And Kurtz and Fred Kurtz exceeded their powers under 710 ILCS 512 Section 3. That's under the arbitration agreement. The arbitration agreement is appendiced to my original brief and for your benefit. The arbitration agreement was given to all the arbitrators. The arbitration agreement was given between John Clark and myself, but they didn't read it. So the only record that we have now, what happened in that arbitration matter was what Timothy Budakoffer put down. He has put a three-page decision. I've written my briefs. Judge Weber had something to say about Black's Law Dictionary of how the matter was handled because of undue influence. Now, Henley and Connolly fired him casually and defined the agreement, what it means, undue influence. Well, it's undue means. Under the statute, it says undue means. And I'm going to read this, and I'm on page 5 of my original reply brief. However, the law of the state of Illinois is contained in Henley v. Connolly, FNC, at 153 LF, relied on Seiter, S-E-I-T-H-E-R, Insuring Company v. Illinois Bank Holding Company, 1990 to 1981, 95 LF, 3rd, 191, etc. The Henley case stated, finally, we also find grounds for victory and reward under Section 12-1 of the Act, which refers to awards procured by undue means. In Seiter v. Insuring Company v. Illinois Bank Holding Corporation, the court defined undue means as some aspect of the arbitrator's decision or decision-making process which was obtained in some manner which was unfair and beyond the normal process contemplated by the arbitration agreement. And then Henley goes on to state, in the present case, there are numerous allegations that were beyond the normal process contemplated by the Arbitration Act, which we find casts serious doubt as the propriety of the decision-making process. And that is on page 5 and 6 of my reply brief. So, they violated the arbitration agreement. Now, in most arbitration agreements, the arbitrators have basically full reign to make a decision, but the decision is based only on the arbitration agreement because that's what tells them, that's the road map for them, the arbitrators, to make the decision. Now, Arbitrator Budekhofer, who was the neutral, was belonged to John Clark and Budekhofer belongs to our side. But Budekhofer did not do what he was supposed to do according to the law of the state of Illinois under the Cesar decision. So, I may be mispronouncing it. And that's the definition of it. And also, Judge Weber obviously did not read the dissenting opinion, did not read Henley v. Economy, nor did he read Cesar v. Cherry, and stated that because the case stated that there was... I wrote the arbitration agreement, John signed off on it, and said that the rules of strict evidence did not necessarily apply. But in paragraph 6, we stated, and we all signed off, all the parties and the lawyers, that that clause could not be modified but only by all three arbitrators and the parties. And that was not done. So, if there is a law, we all know, page... paragraph 6 is on... I know what your... I've got it marked in my book. Well, maybe I missed this, but can you tell me what you think the standard of review is? Yes, in a violation of law. You think it's de novo? Yes, it is. In an arbitration agreement, if they violate the arbitration agreement, the law, and I can give you that law, says... That's all right. That they exceeded their powers. Next is... Unfortunately, I've had a stroke. It's 512, 710 ILCS 512, section 3. The arbitrators exceeded their powers. That's a violation. There was a transcript of this arbitration hearing. Is that correct? There was not a transcript of the arbitration proceedings. There was a transcript of the proceedings of all the testimony. And the arbitration proceedings, typically, is not recorded by a court reporter. So, we excuse the court reporter. I'm sorry. So, the bottom line is they exceeded their powers. They violated the majority, violated the rules under paragraph 6, which said that it could not be changed unless all three arbitrators signed off and all the parties signed off, but Mr. Kutzler did it on his own. And Fred, not Mr. Kutzler, Aloysius Kurtz, but Mr. Kutzler signed off on it, and Tony Grace made a decision, and it was 7,000 bucks. And it was over $100,000, and Mr. Butegoffer's calculations are approximately, by the evidence, was approximately $130,000, $140,000. So, that's a, pardon my French, that's a hell of a lot of difference. $140,000, $70,000 bucks. So, I think, I submit to this court that the violation of the arbitration agreement and the violation of exceeding powers, which I, in that statute that I just cited, is just plainly enough. The arbitration, your duty is, if you believe in me, or my case, you remand it back to another judge, and that judge will select three arbitrators, and the arbitration proceeding will be done anew. I mean, it's just not like, I mean, the arbitration agreement, and that's in the arbitration statute, that if these things, you know, violation of the arbitration agreement, violation of exceeding powers, that all has to go right back to a new judge, and he or she will appoint the three new arbitrators, and the arbitration proceeding will proceed. That's the way it is. It didn't work out that way for us, but anyway, that's the way it was supposed to be. If the arbitration, I mean, if the judges have any questions, I'll take them. I don't believe we have any more questions. Thank you, counsel. Counsel? Yes. Please report to counsel, Mr. Douglas. First of all, your honors, I'd like to take a moment to make sure that the record, the factual record is clear in this case. I believe Mr. Douglas advocating his client's position has inadvertently overstated or misstated some facts that occurred. First of all, he says in his reply brief and said in an oral argument this morning that Judge Weber, the circuit court judge who reviewed this case, did not read the arbitration agreement. The order that is being appealed from, Judge Weber's order, recites multiple paragraphs from the arbitration agreement. So clearly and demonstrably, Judge Weber did read the arbitration agreement, and I think that that's an unfair criticism of Judge Weber to suggest that he did not. Second of all, in his reply brief and in some of this morning's oral argument, it's argued that the majority of the arbitrators, first of all, were required to prepare a written document, and second of all, did not. The arbitration agreement, paragraph 6, says that the arbitrators will prepare a written document which can be handwritten making the award. In this case, in the record, there is an award signed by a majority of the arbitrators. There is no requirement that any sort of elaborate opinion be prepared by the arbitrators, simply a written award, and that was in fact done. Next, it is argued in page 5 of the reply brief, again, that Judge Weber, quote, did not read the dissenting opinion, closed quote. Judge Weber's order specifically states that he reviewed the platings. This included the dissenting opinion prepared by Mr. Douglas' chosen arbitrator, and the order, Judge Weber's order, and really, the sum and substance of Mr. Douglas' argument, both at the trial court level and before this court, relies at its heart on this, after the fact, dissenting opinion letter of his arbitrator. So clearly, that was reviewed, that was considered, and to suggest otherwise is neither supported by the record nor a fair criticism of the trial judge. Is there anything in the record that explains why the dissenter waited a month? I'm sorry, say that again.  No, there is nothing. What happened was that when the arbitration award was prepared, the dissenter handwritten on it said words to the effect that I will at some time in the future prepare a written analysis of my opinion or say why he thinks what he thinks. And it just showed up out of the blue, basically. So no, there's nothing to suggest why. You know, the facts in this case, and we're all kind of guilty from time to time, lawyers are guilty from time to time of seeing things just from their side of the fence, but it seems to me that the facts in this case were fairly compelling for my clients. The evidence at the arbitration proceeding showed there was a one-year written contract. At the conclusion of that year, there was a brief, almost superficial discussion between the parties, and there was an agreement to extend it with no date in mind. My clients continue making the lease payments. Mr. Douglas' client doesn't want his cows back at that time. This goes on for a couple years. My clients then say to Trimble, the lease is over. They quit making payments. He doesn't pick up his cows. This is a cow lease. Another two years go by. My clients say to him, when are you going to pick up your cows? At that point in time, he says he doesn't want his cows back then. He doesn't have a milk contract. He can't milk his cows. He leaves them at my client's place. They take care of them. They feed them. My clients milk them. Then, roughly three years after my clients say the lease is over, stop making payments, and you can pick up your cows, three years later, what we get is a claim saying, oh, you owe us all this bad lease rent for this period of time. You had our cows, and we didn't pick them up. Pick them up. Well, counsel, let me ask you this. I understand the initial position of Neutral as far as, in effect, he was saying it latches on the contract, enforcing his rights on the contract, slept on his rights. That's what we call it. He argued, essentially, latches. But when he – the things that bother me about this are, number one, there had to be agreement if they altered any kind of procedure. But more importantly, when the two arbitrators decided to ask one of the parties, what do you think is fair, and decided the two of them to adopt that as the judgment of the arbitration panel, didn't they, in effect, abandon their role as arbitrators, as deciders of the factual issues, the genuine factual issues? And make an award that was beyond normal process as contemplated by the Arbitration Act, and do it by undue means? Well, my feeling, my response to that is, no, I do not believe they did that. No, I know you don't. But I'd like to know why. So, so. I guess I did that in a cross-examination manner. I apologize, but I would like to know what your reasoning is. Yeah, I can deal with that. Okay. So, first of all, you know that what we have is the dissenter's version of what happened. Of course. Okay. Second of all, if you read it, and I think, Your Honor, if you read it fairly, what, and I like to think we all, anyway, the factual representation that is made by the dissenting arbitrator is essentially this. The arbitration hearing concludes. They go into deliberations. The neutral arbitrator, and implicitly the arbitrator selected by my clients, want to award nothing. And he, the dissenter, says that he tried for over two hours to convince them that not only should something be awarded, but a substantial amount of money in excess of $100,000 should be awarded. At that, and ultimately, what he, the argument that finally apparently triggers some response from the other two arbitrators is, hey, even Tony Graves, even one of my clients, said at the arbitration hearing, well, we think we probably owe something. So that is the context of this. And these two, what I'll call the majority side, when they hear that, they say, well, he said they owe something. We don't know what he meant by that in the sense of how much he thinks they owe. I suppose something is more than nothing, which is where they were. They reopened the evidence. And let me just, you know, in my experience, at least, is that in the context, for example, of a bench trial. Sometimes, while a case may be under advisement by a trial court, a motion is made by one of the sides to reopen evidence. That's not extreme, or it happens from time to time. In this particular case, neither of the participants made that motion. In effect, the decider of the case elected it, decided it needed, they as a group, at least the majority of them, decided they needed more evidence, a clear indication of what Tony Graves meant when he said we owe something. And they decided, the majority decided to reopen this and ask, you know, the dissenting argument, Mr. Douglas picks up and says, well, basically, they let Tony Graves say how much was owed. And I suppose that's one way you could spin it. But what really went on, I think, and what I think the record reflects, to the extent there is a record, is the dissenting arbitrator's opinion letter, is that they, the majority, were, if anything, bending over backwards to try and be fair to Mr. Trimble and the dissenting arbitrator. They said, okay, something is owed. Let's ask, Graves said something is owed. Let's ask Graves what he meant by that. And that's where the $7,000 figure came from. That's where the award came from. And that's kind of the background and context in which this reopening. All three of us have been trial judges. We've all either reopened cases on motions of the party or on our own motion. I have in divorce cases. My concern is it sounds like, and I don't see anything in the record contravening it, that the majority in the arbitration panel essentially said, let's see what he thinks is fair, and that's what will be fair. And that seems to be a vacation of their duty to be deciders of the contested issues of fact. Well, and I feel like I'm recalling, I don't mean to repeat myself. No, I understand that. But, and this is serious, but I view this as the majority wanted to award zero. And they accommodated it to a certain extent. The dissenting arbitrators argument of Tony Graves says, yo, something. And so it was more in the nature of an accommodation to get something rather than a washing their hands and abandoning their duties as the decider of the case. Okay. That's the way I view it. Thank you. Okay. And, you know, with hindsight, Your Honor, I suppose having gotten this dissenting opinion letter, it would have been nice if the other arbitrators had written some response, I suppose. But we're now, you know, a month-ish past the hearing. These people have dispersed, and it is what it is. Just to wind up quickly, as the Court knows and as Mr. Douglas has indicated, there's a statute which sets forth the statutory basis for vacating arbitration awards. It's very limited. The trial court in its order, and Mr. Douglas has used the words in almost all of the potential bases. But really, I sense before this Court, and sometimes I misperceive things, but I sense before the trial court, now I sense before this Court, whatever words you want to put on it, ultimately it gets down to this question of was it inappropriate to reopen the evidence and to let Tony Graves say what he meant by the $7,000 figure. The trial court considered that, rejected that argument. In paragraphs H, I, and J of the trial court's opinion, the trial court noted that the written arbitration agreement, it was not violated and that the arbitrators did not separate. The arbitration agreement permitted the arbitrators to ask questions, and the arbitration agreement relaxed the formal rules of evidence. There is, there was no, nothing fundamentally unfair about the process. Mr. Douglas and I, our clients were all there when this reopening of the evidence took place, and we believe that the reopening of the evidence ultimately inured to the benefit of Mr. Douglas' client to the tune of $7,000 versus zero. Was there any objection made at that time? There was no objection made at that time, Your Honor. That's all I have. Let me ask you this. This statement by Bucoffer says, finally, Kirks made a motion that we would let the Graves brothers decide on how much they owed, and that would be the final amount of the settlement. That's troubling to me, that they gave away their responsibility to the Graves brothers. Is there anything that disputes that that's what happened? Your Honor, sadly, I cannot look in the eye and tell you there is, because there is not. This came in after the fact, and it is what it is. Thank you, Counsel. Thank you, Your Honor. Counsel? Yes, Your Honor. The statute says that articles are not like our civilian courts. It's 90 days for somebody to rectify an act, and it's statutory, Your Honor. Secondly, there is no written place in the record that says that Fred Kuntzler and Aloysius Kirks was going to give nothing. There's nothing in the record, any place, that's all here says. So those are the two things that I noticed in Mr. Clark's arguments. There's 90 days to do whatever you have to do in an arbitration proceedings, and there has to be a record, and there was no record. And I'll tell you why. Now, I didn't speculate any time before this court, but Mr. Aloysius Kirks had an opportunity, Fred Kuntzler had an opportunity to rebut Tim Budafuck, and I'm sure, I won't say that. The other two arbitrators could have done this and rebutted what Tim Budafuck said, but we didn't. There's no written record, and verified by John. Thank you, Your Honor. Thank you, Counsel. We appreciate the briefs and arguments of Counsel. We'll take the case under advisement.